JOHN STORM v. LOTT SMITH.

1. CONTRACT—CONSIDERATION—PRACTICE.—The purchaser of personal property on credit, at guardian's sale, under erroneous decree of the probate court, cannot set up error in decree as defense to an action for the purchase money; but in such case he must seek relief by a reversal of the decree and return of the property.

2. SALES—CAVEAT EMPTOR.—In this country there is an implied warranty by a vendor of the title to his own goods if in his possession at the time of sale; but if in the possession of a third party, there is no such warranty, and the maxim *caveat emptor* applies.

3. TRUST SALES—CAVEAT EMPTOR.—It is well settled that in trust sales of any kind there is no implied warranty of title, soundness or quality. And if the vendee be put in possession, and protected by covenants of warranty, he cannot defeat an action for the purchase money, (except in cases of fraud,) without a previous eviction; and this rule applies to sales of personal, as well as real of property.

4. JUDICIAL SALES—VOID DECREES—ERRONEOUS DECREES—TITLE.—The purchaser at a sale made under a *void* decree, obtains no title; but if the decree be under a decree not void but only *voidable* or erroneous, the title is good, and the sale must stand till the decree be reversed on error.

Appeal from the chancery court of Lawrence county. McNAIR, J.

The appellant assigned the following error: That the court erred in dissolving the injunction granted to the complainant on his original bill.

*J. B. Chrisman*, for the appellant.

So far as the *laches* of the appellant is concerned, in not having made his defense at law, the court is referred to the case of Chrisman v. Beasley, Freeman's Chan. Rep.; also S. & M., Ch. Rep., 561. If that case is law, and it has not been reversed, there is nothing to be apprehended by the appellant, upon this point. I need not refer to the unbroken current of decisions which pronounce a sale of property, other than personal property, for payment of debts, by the probate court, not in compliance with statutory regulations, absolutely void. The court acquires no jurisdiction, and no power to divest the title of heirs to property, except by a strict compliance with the statute. It is clear that this sale was utterly void.

But it is said the purchaser should return, or offer to return or show good excuse, etc. It is believed that this rule applies where the sale is capable of confirmation by the parties, and is inapplicable to the case at bar. This is not so in the case of Ware et al. v. Houghton, Exr., 40 Miss., and so confidently relied upon by the appellee. In that case the statute of limitation had perfected the title of the purchaser against the executor and the lien. He had " cut off all remedy from those supposed to possess the superior title." But in this case the negro was the property of a minor, who could waive nothing in the matter of service upon him, and who is incapable of confirming the sale. Campbell v. Hays, was a service on the guardian, which is the same as on an adult, under our statute. Rev. Code, 446.

Under the prayer of the complainant's bill, he may be charged with the hire of the slave from the date of his purchase from the guardian till the date of emancipation, and this rule, under the circumstances of this case, would be more in accordance with the beneficent spirit which guides and controls a court of equity, than to throw the loss on Storm, who absolutely acquired no title whatever.

*Benj. King*, for the appellee.

This case and every point of it is decided against the apellant and in favor of the appellee, in the case of Ware v. Houghton, 41 Miss., 370; see also, Campbell v. Hays, 41 Miss., 561; Madeira v. Hopkins, 12 B. Monroe, 595. The appellant, Storm, living all the time, as the record shows, within twenty-five miles of the court-house, where he might have had access to the records at any time, kept the negro from March, 1860, until 1865, when he was emancipated, without returning or offering to return him. And then, eight years after his purchase, he sets up this want of title and asks a court of equity to relieve him and throw the loss on an infant.

PEYTON, C. J.:

It appears from the record in this case that the appellee, as guardian, sold, on the 17th day of March, 1860, at public auction, under a decree of the probate court of Copiah county, a negro slave named Joe, the property of his ward, to John Storm, the appellant, on a credit of ten months, for the sum of $1,335, for which he executed his note with sureties to the said guardian.

The appellee instituted suit upon this note to the November term of the circuit court of Lawrence county, and obtained a judgment thereon at the May term, 1867, of said court, for the sum of $1,903 50, and from this judgment a writ of error was prosecuted by the appellant in the high court of errors and appeals, and at the April term thereof, 1868, the said judgment was affirmed.

After the affirmance of the said judgment the appellant filed his original and amended bills of complaint in the chancery court of said Lawrence county, and on the 14th day of July, 1868, obtained an injunction restraining the collection of the judgment. The said bills allege that the order or decree of the probate court was void; that in consequence thereof the appellant acquired no title to the property sold, and that the consideration of the note given to secure the purchase money had entirely failed; and that he was not

aware that the said decree of the probate court was void until within ten days next before the filing of his original bill of complaint. The said bills of complaint admit that the appellant went into possession of the slave upon the sale and purchase thereof and continued in such possession until the emancipation of said slave in 1865, and that the consideration of the note, upon which said judgment was founded, having wholly failed as aforesaid, pray that the collection of the said judgment be perpetually enjoined.

The appellee, in his answers to the said bills of complaint, denies that the decree of the probate court under which said sale was made was void, and that the consideration of the note given for the purchase money at said sale had failed, and insists that the appellant's defense, if any he had, should have been made at law.

The appellee moved the court upon the bills, answers, exhibits, and proofs, to dissolve the injunction which had been granted in this case, which motion was sustained by the court, and the injunction dissolved. Hence the cause comes into this court by appeal on the part of the appellant, who assigns for error the action of the court below in dissolving the injunction.

The counsel for the appellant insists that the order or decree of the probate court authorizing the sale of the slave was void, but does not inform us of the defect in the proceedings of that court that renders it invalid. Upon an inspection of the record of the proceedings in the probate court with reference to said decree of sale, we can find no other defect than that in the sheriff's return of the service of process, which does not make the decree void, but goes only to the question of error. And the parties interested in said decree not having complained of the insufficiency of the return by a direct proceeding to reverse it, it must be regarded as a valid decree of sale.

The rule at present in England, though formerly otherwise, is, that a sale of personal property implies an affirmation by the vendor that the chattel is his, and therefore he warrants

the title, unless it be shown by the facts and circumstances of the sale that the vendor did not intend to assert ownership but only to transfer such interest as he might have in the chattel sold.   Benjamin on Sales, 476.

The distinction between goods in possession of the vendor and those not in his possession, so decisive repudiated in England, seems to be fully upheld in this country, and the rule here is that as to goods of the vendor there is an implied warranty; but where the goods sold are in possession of a third party at the time of the sale there is no such warranty, the maxim of *caveat emptor* applies, and the purchaser buys at his peril.   2 Kent, (11th ed.), 631; Dresser v. Ainsworth, 9 Barbour, 619; Edick v. Crim, 10 Barbour, 445; and Long v. Hickingbottom, 28 Miss., 772.

But it is equally well settled that in the case of sales by executors, administrators, and other trustees, there is no implied warranty either of title, or soundness or quality of the property sold.   And where the vendee has protected himself by covenants of warranty, and is put in possession, he cannot defend himself against the payment of the purchase money without a previous eviction, unless in cases where there has been fraud.   And this rule applies as well to personal as real property.

In the case at bar, the appellant had been in the peaceable and undisturbed possession of the slave, and enjoyment of his services from the time of the purchase until his emancipation in 1865, a period of more than five years, without returning or offering to return said slave to the appellee, and now resists the collection of the purchase money on the ground of a failure of consideration, resulting from an alleged want of title.   In the case of Joslin v. Caughlin, the purchaser of the property at the sale set up the defense to the collection of the purchase money, that the decree, under which the sale was made, was void for the want of notice to the parties interested, and that no title passed by the sale, and hence the consideration of the note given for the property had entirely failed.   But the court very promptly decided

that, without having made an offer to return the slave to the plaintiff, the defendants could not resist the payment of the note, notwithstanding the invalidity of the order of sale. 27 Miss., 852. And the same case came again before the court, who say that the defendant was bound to put the plaintiff *in statu quo* and restore him in his rights, before he could set up the defense of failure of title. 32 Miss., 104. In the case of Bohannon v. Madison, 31 Miss., 348, where there was an attempt to evade the payment of the purchase money on the ground that the sale was void, the court say of the defendants that, "by their purchase they acquired the possession of the slaves; and if the sale was void, they should have instantly returned the property to the executor."

Parties who set up the illegal action of the executor or administrator, as a defense for not performing their contract, ought to return or offer to return the property. And in the case of Washington v. McCaughan, 34 Miss., it was said: "The rule is now firmly settled in this court in regard to a sale of personal estate by an administrator, that the purchaser, retaining possession, and not offering to restore the property to the administrator, shall not be permitted to resist the payment of the purchase money on the ground that the sale was invalid."

In the present case the appellant alleges as a reason for not returning the property until it was out of his power to do so, that he was not aware of his want of title to the property, until within ten days of the time of filing his original bill to enjoin the collection of the judgment at law against him, and perhaps even then he might not have made that important discovery but for the extraordinary stimulus of the emancipation of the slave. The record shows that he lived within twenty-five miles of the probate court that made the order of sale, and neglected for more than five years to examine into the validity of the proceedings of the probate court. It was but reasonable to suppose that the suit at law for the recovery of the purchase money, would have been sufficient to have induced him to investigate his title, yet it seems he

wholly neglected to do so. If there had been any defect in his title to the property, by the use of ordinary diligence, he might have discovered it during the pendency of the suit at law, and whatever his defense may have been, it should have been made there. In the case of Ware v. Houghton, the court say: "The rule of diligence ought to be more stringent where the title is deduced under the judgment or decree of a court of easy access, and open at all times for examination. Indeed it is a familiar general principle that a party deriving title under or through a judicial proceeding, is charged with notice of whatever appears by the record." 41 Miss., 384.

The record in this case presents no valid ground of defense, either at law or in equity, against the payment of the purchase money. The case above quoted, of Ware v. Houghton which is very similar in its facts, we regard as decisive of this case. The court there say, that "if a party, by any cause, becomes unable to return the property before he discovers the defect of title, it would seem more equitable that he should be left to his recourse on his covenants, and if he has not protected himself by covenants, that he should be without remedy."

It is a well-established principle of law that a purchaser under a void judgment or decree, acquires no title to the property purchased. But it is equally well settled that if the judgment or decree be only erroneous, he acquires a good title to the property purchased under it. The reason given is, that great inconvenience would follow a contrary doctrine, so that none would buy in such cases, and execution of judgments and decrees would not be done. Manning's case, 8 Coke, 192. In 8 Coke, 284, it was held that if an erroneous judgment is given, and the sheriff, by force of a *fieri facias*, sell a term of the defendant, and afterward the judgment is reversed by writ of error, yet the term shall not be restored, but only the money for which it was sold; because the sheriff was commanded and compelled by the writ of execution to sell it. The uniform current of authorities sanctions this

doctrine. Woodcock v. Bennet, 1 Cowen, 734. An errone-
ous or voidable judgment or decree stands good until reversed,
and can only be reversed on application of a party to the suit.
A stranger, in such case, who becomes a purchaser, under
the judgment or decree, will be protected. When his title
was acquired, the judgment or decree was valid. He cannot
be affected by subsequent acts, over which he had no control.

In the present case, the decree of the probate court author-
izing the sale of the property, being only erroneous, the
appellant acquired a good and valid title to the slave by his
purchase, which continued so until it was destroyed by the
emancipation of the slave, and he must therefore sustain the
loss occasioned by that event.

For these reasons, the decree of the court below must be
affirmed.