SCHNEIDER & DAVIS V. M. SANSOM.

(Case No. 1672.)

1. SALE OF PARTNERSHIP PROPERTY.— Where one partner alone sells the entire stock of goods of the firm, for the purpose of paying its indebtedness, if there is no fraud, the sale is valid.

2. SAME — CONSIDERATION.— Such a sale, if the consideration be adequate, and no fraud exists, cannot be attacked by creditors of the firm. Greenleve, Block & Co. v. Blum, 59 Tex., 126, cited and approved.

3. SAME — SALE ON SUNDAY.— A sale of the goods of a partnership for the purpose of paying off a debt, made on Sunday, is not invalid on that account.

APPEAL from Johnson.  Tried below before the Hon. Jo. Abbott.

On December 11, 1882, appellants brought suit against R. M. Chapman & Co., in the county court of Johnson county, on a claim for $420.32, and caused an attachment to be issued, which on the next day was levied upon certain merchandise in the possession of the appellee, as the property of Chapman & Co.

Appellee then made claim in accordance with the statute, and as the property was valued at $759.27, the affidavit and bond of the claimant, and the writ with the levy thereon indorsed, were returned to and filed in the district court of Johnson county.

On May 2, 1883, the cause was tried without a jury upon issues made up under the direction of the court, and judgment was rendered for the claimant.

*Poindexter & Padelford*, for appellants.

*Brown, Ramsey & Crane*, for appellee.

WATTS, J. COM. APP.— This is a proceeding according to the statute, to try the right of property to certain merchandise.  Appellants, claiming as creditors of Chapman & Co., caused an attachment sued out against that firm, to be levied upon the property in the possession of appellee Sansom, who claims to have previously purchased the same from J. H. Brown and others, who had purchased from Chapman & Co.  The material issues presented by appellants, and contested below, were:

1st. That the sale was made by Chapman & Co. to J. H. Brown and others on Sunday; that they sold to Sansom on the same day; and for that reason appellants claim that the sale was void, and the property subject to their writ of attachment.

2d. That the sale was made by Chapman & Co. for an inadequate

consideration, and for the purpose and with the intention to hinder, delay and defraud their creditors, and that this was well known to the purchasers at the time, and also known to Sansom at and before his purchase.

3d. That the sale was made by Chapman without the concurrence of the managing partner, Smith, and therefore void, and the property subject to the writ of attachment.

The court found against appellants upon each of these issues, and it is now claimed that these findings are erroneous.

For the sake of convenience these questions will be considered in reversed order.

Generally each partner may bind the firm by any act or contract that is embraced in the general scope of the partnership business. Each partner is considered generally as the agent of the firm in all matters pertaining to its business, and as such may bind the other partners the same as if he acted under a duly executed power of attorney for that purpose. McKinney v. Bradbury, Dallam, 441; Blodgett v. Weed, 119 Mass., 215; Decker v. Howell, 42 Cal., 636; Campbell v. Dent, 54 Mo., 325; Pahlman v. Taylor, 75 Ill., 629; Kenney v. Altvater, 77 Penn. St., 34.

It is also well settled that one partner has the authority and may sell the whole or any part of the assets of the firm in the regular course of business, or for the purpose of paying the debts of the firm, where there is no fraud in the sale. Graser v. Stellwagen, 25 N. Y., 315; Williams v. Barnett, 10 Kan., 455; Halstead v. Shepard, 23 Ala., 558; Cayton v. Hardy, 27 Mo., 536; Arnold v. Brown, 24 Pick., 89; Lamb v. Durant, 12 Mass., 54.

Nevertheless one partner cannot use the partnership property, either in whole or in part, in the payment of his individual debts, unless it is done with the assent, either expressed or implied, of the other members of the firm. Buck v. Mosley, 24 Miss., 170; Rogers v. Batchelor, 12 Pet., 221; Sauntry v. Dunlap, 12 Wis., 364.

But as has been already shown, he may sell the partnership effects in whole or in part in the payment of partnership debts, without the assent of the other partners, provided that the sale is not tainted with fraud.

Here, Chapman alone was present, and, as is claimed, made a *bona fide* sale of the property in payment of partnership debts, for the purpose of avoiding a sacrifice of the property by levy of the attachment. It seems that Smith, the other partner, has acquiesced in the sale; at least it does not appear that any complaint was made by him. Hence the conclusion is reached that Chapman had the right

to make the sale for the purpose claimed, provided that it was in no way tainted by fraud.

And that is the next question for consideration.

While there is a contrariety of opinion among the witnesses as to the value of the merchandise sold to Brown and others, still the finding of the court to the effect that the consideration paid was adequate is abundantly sustained by the evidence. It also appears from the evidence that the sale was made for the purpose of paying off and discharging these firm debts, and that no fraudulent intent was involved in the transaction.

In Greenleve, Block & Co. v. Blum, 59 Tex., 126, the well established doctrine is reiterated by Justice Stayton in the following appropriate language: "The right of a creditor to receive property from an insolvent debtor in payment of a debt due him, if the same be openly done, and more property is not taken than is reasonably necessary to pay the debt, although the creditor may know at the time that he so receives the property that he will thereby prevent other creditors from enforcing their claims, and although the creditor may know that the debtor is prompted to give him the preference through motives of friendship, is recognized; such reception of property, however, must be *bona fide, i. e.,* for the sole purpose of securing the debt, and not with the intent to cover up any part of the property or its proceeds for the benefit of the debtor to the prejudice of other creditors."

A correct analysis of the evidence found in the record fully supports the finding that the sale to Brown and others comes within the purview of this well established rule.

But it is earnestly insisted that, as the sale and delivery both to Brown and others, and by them to Sansom, was made upon Sunday, that the transaction was therefore inhibited by law, and consequently void in that sense of the term that subjects the property to the writ of attachment.

If it should be conceded that this transaction came within the statutory inhibition, it by no means follows that it would be void in that broad signification or sense of that term urged by the appellants. It clearly appears that the contract was entirely executed on the day of the sale, *i. e.*, the property was delivered and the consideration paid by the cancellation and delivery of the evidences of Chapman & Co.'s indebtedness. Such being the case, in the absence of fraud in the sale, the title vested in Brown and others, Chapman & Co. could not maintain an action for the recovery of the property; all their right passed by the sale and delivery; and as

appellants had no other or greater right to the property than Chapman & Co. had, they could not, as creditors of the latter, in the absence of fraud in the sale, maintain an action for its recovery that could not be maintained by Chapman & Co. That is, the transaction would not be absolutely void under all circumstances, and for all purposes, but would only be void to the extent of depriving the parties of any right of action based upon it. For instance, Chapman & Co. could not have maintained an action for the purchase money or consideration, had it not been paid; neither could Brown and others, for a rescission of the contract or for damages, on account of fraud in the sale. Smith v. Bean, 15 N. H., 578; Horton v. Buffinton, 105 Mass., 400; Moore v. Kendall, 2 Wis. (Pinney's), 104; Benjamin on Sales (1st ed.), p. 416.

The inhibitions against engaging in secular avocations on Sunday, which could have the remotest bearing upon the question before us, are embraced in arts. 183 and 186 of the criminal code; the first provides that: "Any person who shall hereafter labor, or compel, force or oblige his employees, workmen or apprentices to labor on Sunday, shall be fined not less than ten nor more than fifty dollars." Among the numerous exceptions from the operation of that article are works of necessity and charity. The other article is that: "Any merchant, grocer or dealer in wares or merchandise, or trader in any lawful business whatsoever, who shall barter or sell on Sunday, shall be fined not less than twenty nor more than fifty dollars," etc. This article had for its special object, the prevention of traders from pursuing their usual business of barter and sale, and thereby promote a proper respect for the sanctity of that day, dedicated, as it should be, to rest, contemplation and worship.

Our civil statutes provide that writs of attachment, etc., may be issued and levied on Sunday. In this case, the writs of attachment had been issued and were then in the hands of the officer for levy. To avoid the levy and consequent sacrifice of the property, it is not believed that any one would contend that Chapman & Co., if they had the money, could not have lawfully paid off and discharged the indebtedness on Sunday. And no difference upon principle is perceived between a payment in money and a payment in property, in this respect. Either would be a work of necessity under the circumstances. And neither would be included in the spirit and intention of the two articles quoted above from the criminal code.

Our conclusion is that there is no error in the judgment, and that it ought to be affirmed.                                   AFFIRMED.